## IN THE UNITED STATES  BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 15 |
| Axios Logistics Solutions Inc., et al.,[1] | Case No. 17-10438 (BLS) |
| | Joint Administration Requested |
| Debtors in a Foreign Proceeding. | |

### DECLARATION OF PETER CRAWLEY IN SUPPORT OF THE MOTION OF RECEIVER FOR ENTRY OF PROVISIONAL AND FINAL ORDERS GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING AND CERTAIN RELATED RELIEF

I, Peter Crawley, hereby declare that the following is true and correct to the best of my knowledge, information, and belief.

1.    A. Farber & Partners Inc. (the "Receiver") is the court-appointed receiver and duly authorized foreign representative for Axios Logistics Solutions Inc., Axios Mobile Assets Inc., Axios Mobile Assets, Inc., and Axios Mobile Assets Corp. (collectively, the "Debtors") in Canadian insolvency proceedings in Toronto, Ontario, Canada (the "Canadian Proceeding").[2]  Contemporaneously herewith, the Receiver filed the Motion of Receiver for Entry of Provisional and Final Orders Granting Recognition of Foreign Main Proceeding and Certain Related Relief (the "Petition for Recognition")[3] seeking (a) entry of a provisional order (the "Provisional Order") (i) enforcing in the United States, on an interim basis, the Order Appointing

---

[1]    The last four digits of the Employer Identification Number for each debtor follow in parentheses: Axios Logistics Solutions Inc. (0963); Axios Mobile Assets Corp. (n/a); Axios Mobile Assets Inc. (n/a), and Axios Mobile Assets, Inc. (2778).  The Debtors' headquarters are located at 30 Topflight Drive, Unit 7, Mississauga, Ontario, L5S 0A8, Canada.

[2]    The Canadian Proceeding includes proceedings under both Canadian federal and provincial law. A. Farber & Partners Inc. was appointed as receiver pursuant to Section 243(1) of the Bankruptcy and Insolvency Act (Canada) (the "BIA") and as receiver pursuant to Section 101 of the Ontario's Courts of Justice Act (the "CJA") with respect to Axios Mobile Assets Inc. and as receiver pursuant to Section 101 of the CJA with respect to the remaining above-captioned Debtors.

[3]    Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Petition for Recognition.

a Receiver (the "Receiver Order") by the Ontario Superior Court of Justice ("Canadian Court") and the stay created by the Canadian Proceeding, by applying sections 362 and 365(e) of the Bankruptcy Code in these Chapter 15 bankruptcy cases on an interim basis pursuant to sections 105(a), 1519(a)(3), and 1521(a)(7) of the Bankruptcy Code, and granting such other and further relief as the Court deems just and proper; and (b) a final order (the "Final Order"), after notice and a hearing (i) granting the Chapter 15 bankruptcy petitions in these cases and recognizing the Canadian Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (ii) giving full force and effect in the United States to the Receiver Order, (iii) applying section 365 of the Bankruptcy Code in these Chapter 15 bankruptcy cases on a final basis pursuant to section 1521 of the Bankruptcy Code, and (iv) granting such other and further relief as the Court deems just and proper.

       2.      I am a Vice President with A. Farber & Partners Inc. and I am authorized to submit this Declaration on behalf of the Receiver in support of the Petition for Recognition.  I am familiar with and knowledgeable about the information set forth herein based on my work in connection with the Debtors.

## A.      General Background

       3.      Axios Mobile Assets Corp. ("Axios Corp"), together with its five wholly-owned subsidiaries, Axios Mobile Assets Inc. ("Axios Canada"), Axios Mobile Assets, Inc., Axios Logistics Solutions Inc. ("Axios Logistics"), Axsense Inc., and Axios Mobile Assets USA Inc. (collectively, the "Axios Group" or "Axios"),[4] are a supply chain logistics company that

---

[4]      Axios Logistics Solutions Inc. also wholly-owns Mobius Logistics, Inc. which is not subject to the Canadian Proceeding or a debtor in these chapter 15 cases. Further, while Axios Mobile Assets USA Inc. and Axsense Inc. are part of the Axios Group, they are also not the subject of the Canadian Proceeding or debtors in these chapter 15 cases because they are dormant entities without assets, liabilities, or operations.

offers technologically advanced shipping pallets primarily to the perishable food industry.  An organizational chart is attached hereto as Exhibit A.

4.     Specifically, the Debtors produce and supply to producers in the perishable food industry an "environmentally friendly" structural and trackable technology enabled mobile asset platform (or pallet) made from composite material as an alternative to traditional shipping options, such as wooden pallets.  The Axios pallets are equipped with advanced radio frequency identification tags, barcodes, and additional sensor capabilities, making them readily trackable at any point in time.  The pallets are manufactured using a proprietary compound through a proprietary manufacturing process, and the intellectual property in connection therewith is owned by Debtor Axios Corp.

5.     Axios Corp is duly incorporated under the law of Ontario. Its registered office is the office of its legal counsel Fogler, Rubinoff LLP, in Toronto, Ontario, and its principal place of business is a leased office located at 30 Topflight Drive, Unit 7, Mississauga, Ontario (the "Head Office").

6.     The primary management and business operations of the Axios Group were conducted from the Head Office with most of the Axios Group executive and senior management working at the Head Office.  The Head Office acted as the "nerve center" of the business in that all accounting functions, strategic decision-making, communication functions, marketing and pricing decisions, new business development initiatives, negotiations of material contracts and leases, acquisition of equipment, and other key functions were coordinated and/or managed from the Head Office in Mississauga. Prior to recent lay-offs and resignations, as discussed herein, seventeen employees (including management) worked at the Head Office.

7.      Before its recent cessation of business operations, the Axios Group had the following distribution system for the pallets: (i) pallet components were manufactured at a factory owned by a third party in Buffalo, New York; (ii) the pallets were then assembled at a factory owned by a third party in Guelph, Ontario; (iii) after manufacture, the pallets were shipped to sanitization facilities (or "wash hubs") in Ohio and Pennsylvania; (iv) following sanitization, the pallets were then shipped on trucks and trailers to customers (predominantly egg producers and suppliers), who then used the pallets to transport their product to regional retail distribution centers; and (v) finally, once a customer's product was delivered to the applicable distribution center, the pallets were retrieved from the distribution center and returned to a sanitization facility for washing before their next deployment.

8.      In addition to the facilities mentioned in the distribution system, the Debtors leased a warehouse in Elmira, New York for unused pallets, and pallet pooling locations in Detroit, Michigan and Ithaca, New York. The Detroit location employed three (3) employees and the Ithaca location had seven (7) employees.  In order to facilitate the rental of pallets and related transportation services within the United States, Axios Canada sold its pallets to Axios Logistics, which was then able to rent to customers in the United States.

9.      As of the filing of this declaration, the Debtors have approximately 80,000 pallets in circulation. The vast majority of the pallets are at thirty (30) retail distribution locations in the United States owned by Wal-Mart Stores, Inc.

**B.      The Debtors' Financials**

1.      *Overview*

10.      Axios was a business entity in the early stage of development. Accordingly, its revenue was derived from and dependent on a limited number of customers.

Gaining new customers was expensive, as Axios's sales model required renting its pallets and pooling services across the entire supply chain from retailer approval to vendor adoption of its products.  Moreover, as it was introducing a new product into an existing marketplace, Axios was competing with established competitors.  However, the rate of adoption among potential customers was not sufficient to cover Axios's increasing operating costs as it attempted to expand into the United States.

11.     Accordingly, despite growth in sales and revenue, the Debtors are not currently profitable.  According to the September 2016 Financial Statements, the most recent financial statements available to the Receiver, Axios had a net loss of approximately $10,835,000 in the nine-month period ended September 30, 2016.  In previous fiscal years, Axios had net losses (before taxes) of approximately $3,100,000 and $9,108,000 in the 2014 and 2015, respectively.

12.     Due to a recent inability to raise additional capital, Axios began experiencing significant financial difficulties.  Further, Axios struggled with high personnel turnover.  A number of the Debtors' key management departed the company. On January 10, 2017, Axios Corp. announced that John Albright had resigned as a director of the company and on January 30, 2017, Axios Corp. announced that Michael Cooke had resigned as Chief Financial Officer.

13.     Attached hereto as <u>Exhibit B</u> is the Debtors' unaudited, condensed and consolidated financial statement ending September 30, 2016 (the "September 2016 Financial Statement").  Generally, at that time, the financial statements reflected assets in the amount of $5,579,000 and liabilities in the amount of $17,285,000.  Through the fourth quarter of 2016, the

Debtors assets continued to decline and, upon information and belief, the Debtors now have only negligible cash resources.

14.     On or around the beginning of February 2017, Axios began to shut down its operation due to a substantial exhaustion of its cash and credit resources.  Axios has since terminated all of its employees other than the Chief Executive Officer of Axios.

2.     *Indebtedness*

15.     Export Development Canada ("EDC") is Axios Canada's senior secured lender.  EDC is the government of Canada's export credit agency.  Its mandate is to assist Canada's export trade by helping Canadian companies respond to international business opportunities. EDC is a self-funding Canadian Government owned corporation operating at an arm's length from the government of Canada.  EDC has extended credit facilities to Axios Canada pursuant to two loan agreements (together, the "EDC Loan Agreements") between EDC, as lender, Axios Canada, as borrower, and Axios Corp., Axios Mobile Assets, Inc., and Axios Logistics, as guarantors (collectively, the "EDC Guarantors").

16.     The first loan by EDC to Axios Canada was made through the loan agreement dated November 25, 2015 (the "2015 EDC Loan Agreement).  The second loan by EDC to Axios Canada was made through a loan agreement dated August 19, 2016 (the "2016 EDC Loan Agreement").  As security for each loan, Axios Canada executed and delivered a general security agreement in favour of EDC.

17.     As of February 9, 2017, the Debtors owed EDC $3,026,383.57 under the 2015 EDC Loan Agreement.  As of that same date, the Debtors owed EDC $2,014,071.24 under the 2016 EDC Loan Agreement.

18.     Pursuant to a Subscription Agreement (the "Subordinated Debenture Subscription Agreement") and a Secured Debenture (the "Subordinated Debenture"), each dated July 22, 2016, Oleg Belittchenko (the "Subordinated Debenture Holder") made a loan (the "Subordinated Debenture Loan") to Axios Corp. in the amount of $3,000,000.   Axios Corp. entered into and delivered a general security agreement dated July 22, 2016, in favor of the Subordinated Debenture Holder.  EDC and the Subordinated Debenture Holder entered into an Inter-Creditor Agreement dated July 22, 2016, and subsequently entered into a Subordination Agreement dated August 19, 2016.  By the terms of Subordination Agreement, the Subordinated Debenture Holder postponed and subordinated the indebtedness under the Subordinated Debenture in favor of the indebtedness of Axios Canada and Axios Corp to EDC.

19.     In addition to the above described secured debt, the Debtors are also liable under certain unsecured convertible debentures ("Convertible Debentures"), issued in December 2014 and April 2015, totaling $3,072,000.  The Convertible Debentures mature on the third anniversary of their respective issue dates and the holders have the option to convert the debentures to common shares of Axios Corp at $1.00 per share at any time on or before the maturity date.

20.     Further, according to the September 2016 Financial Statements, as of September 30, 2016, the Debtors have approximately $3,523,000 of outstanding accounts payable and other accrued liabilities.  All of the Debtors' accounts payable are now past due

**C.     Application for the Receiver Order**

21.     EDC brought the application for the Receiver Order on an expedited basis when EDC became aware that pallets owned by the Debtors, and located at various third party retail centers throughout the United States, were at risk of being disposed of by the owners of the

retail centers, if not promptly retrieved.  Counsel to the Subordinated Debenture Holder was given notice of the urgent receivership application the day prior to the hearing of the receivership application.  The Canadian Court granted the Receiver Order on an urgent basis.  The Receiver Order provided for a "Receiver's Charge" which secured fees and disbursement of the receiver and the fees and disbursements of the Receiver's counsel against the collateral of the Debtors, including the collateral located in the United States.

22.     The Canadian Court also authorized the Receiver to borrow up to $300,000 from EDC, which is the amount the Receiver estimates will be needed to cover fees and disbursements during the initial investigatory phase of the receivership.  The initial investigatory phase will be focused on retrieving and securing the pallets, determining creditor constituencies of the Debtors, and determining ownership of the pallets.  In this regard, the Canadian Court granted a  "Receiver's Borrowing Charge" against the assets of the Debtors, including assets located in the United States, to secure the Receiver's obligation to repay any borrowed amounts, up to a maximum principal amount of $300,000 pending a further order of the Canadian Court.  The Receiver may need to return to the Canadian Court to authorize additional borrowings and an increase in the Receiver's Borrowing Charge, once a realization strategy is determined.  The court-ordered charges rank in priority to pre-appointment unsecured claims of the Debtors and the claims of secured creditors given notice of the receivership application.

23.     Given the urgent nature of the application, the Canadian Court ordered EDC's counsel to return to the Canadian Court to provide a status update on March 6, 2017.  Counsel to EDC is currently working to provide broader notice of the Receiver Order to potential stakeholders of the Debtors and is advising these parties of the status hearing.

**D.      Recognition as a Foreign Main Proceeding**

24.     It is my belief that the Canadian Proceeding is the only foreign proceeding
with respect to the Debtors.  I understand that this satisfies the requirements of section 1515(c) of
title 11 of the United States Code (the "Bankruptcy Code").

25.     The business operations of the Axios Group are carried on principally
from its Head Office.  The key management of Axios, which includes the Chief Executive
Officer of Axios Corp, Mr. Richard McDonald, is located at the Head Office.  All corporate-
level decision-making and corporate administrative functions affecting the Debtors are
centralized at the Head Office.  Further, Axios Corp, the ultimate parent entity within the Axios
Group, is duly incorporated under the laws of Ontario and has its registered agent at the offices
of its legal counsel Fogler, Rubinoff LLP in Toronto, Ontario.

26.     Based on these facts, I believe the Canadian Proceeding is a "foreign main
proceeding" as I have been advised that term is defined in Bankruptcy Code sections 101(23)
and 1502(4).  The Canadian Proceeding is pending in Toronto, Ontario, Canada.  Moreover,
Ontario is the "center of main interests" for the Debtors.

**E.      Need for Provisional Relief**

27.     Contemporaneously herewith, the Receiver filed the Petition for
Recognition seeking, among other things, provisional relief as follows:

> (i)     pursuant to sections 105(a) and 1519(a)(1) of the Bankruptcy Code,
> except for the receivership pending in Canada, enjoining all persons and entities
> (including but not limited to all creditors of any of the Debtors) from seizing,
> attaching, possessing, executing and/or enforcing any claim or lien against any
> property located in the United States in which any of the Debtors has an interest;
> and

> (ii)    pursuant to sections 105(a) and 1519(a)(3) of the Bankruptcy Code,
> applying sections 362 and 365 of the Bankruptcy Code in these cases, thereby
> (a) staying any and all actions or proceedings against the Debtors and their assets
> located in the United States and (b) preserving contracts that have not been

terminated and enjoining all persons and entities from taking any action to terminate or modify any executory contract or unexpired lease with any of the Debtors, including without limitation the right to rely upon any contractual provision purporting to effect a termination or modification solely because of a condition of the kind described in section 365(e)(1) of the Bankruptcy Code.

A stay of proceedings against the Debtors' assets located in the United States, as well as the provisional application of sections 362 and 365 of the Bankruptcy Code, is crucial to preserve key contracts and prevent any creditors of the Debtors from pursuing remedies and taking other action that may have a cascading and devastating effect and result in significant erosion in the value of the Debtors' assets to the detriment of all stakeholders.  It is imperative to the Receiver's ability to preserve the value of the Debtors' assets, that the Receiver has an opportunity to locate and inventory such assets.  Accordingly, application of section 362 and 365 of the Bankruptcy Code is necessary so that contract counterparties continue to be obligated pursuant to the Debtors' contracts, if any, to preserve and maintain the Debtors' pallets in working condition until such time as the Receiver can retrieve them.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 28, 2017

/s/
_____
Peter Crawley, MBA, CPA, CA, CIRP, LIT
Vice President
A.  Farber & Partner Inc.

11