IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Axios Logistics Solutions Inc., et al.,[1]<br><br>Debtors in a Foreign Proceeding. | Chapter 15<br><br>Case No. 17-10438 (BLS)<br><br>Jointly Administered<br><br>**Proposed Hearing Date: August 31, 2017 at 10:00 a.m.**<br>**Proposed Obj. Date: August 24, 2017 at 4:00 p.m.** |

**RECEIVER'S MOTION, PURSUANT TO SECTIONS 105(a), 363, 1501, 1507, AND 1521
OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002, 6004, AND 9014,
FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE APPROVAL
AND VESTING ORDER; (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL
OF THE DEBTORS' ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS,
ENCUMBRANCES, AND OTHER INTERESTS; (III) RECOGNIZING AND
ENFORCING THE ANCILLARY ADMINISTRATION ORDER; AND (IV) GRANTING
RELATED RELIEF**

A. Farber & Partners Inc. (the "Receiver"), the court-appointed receiver and duly

authorized foreign representative for Axios Logistics Solutions Inc., Axios Mobile Assets Inc.,

Axios Mobile Assets, Inc., and Axios Mobile Assets Corp. (collectively, the "Debtors") in the

Canadian insolvency proceedings in Toronto, Ontario, Canada (the "Canadian Proceeding"),[2] by

and through its undersigned counsel, and in accordance with the Approval and Vesting Order

(the "Vesting Order") and Ancillary Administration Order (the "Administration Order"), drafts

of which were served on interested parties on August 11, 2017, will be filed with the Canadian

---

[1]    The last four digits of the Employer Identification Number for each debtor follow in parentheses: Axios
Logistics Solutions Inc. (0963); Axios Mobile Assets Corp. (n/a); Axios Mobile Assets Inc. (n/a), and
Axios Mobile Assets, Inc. (2778).  The Debtors' headquarters are located at 30 Topflight Drive, Unit 7,
Mississauga, Ontario, L5S 0A8, Canada.

[2]    The Canadian Proceeding includes proceedings under both Canadian federal and provincial law. A. Farber
& Partners Inc. was appointed as receiver pursuant to Section 243(1) of the Bankruptcy and Insolvency Act
(Canada) (the "BIA") and as receiver pursuant to Section 101 of the Ontario's Courts of Justice Act (the
"CJA") with respect to Axios Mobile Assets Inc. and as receiver pursuant to Section 101 of the CJA with
respect to the remaining above-captioned Debtors.

Court on August 14, 2017, and are set to be entered on August 24, 2017,[3] hereby moves this

Court for the entry of an order, substantially in the form attached hereto as Exhibit A (the "U.S.

Order"), pursuant to sections 105(a), 363(b), (f), (m), and (n), 1501, 1507, and 1521 of title 11 of

the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") (a) recognizing, enforcing, and giving full force and effect to the

Vesting Order, pursuant to which the Canadian Court has authorized the sale and transfer (the

"Sale") by the Receiver of the Debtors' right, title, and interest in and to substantially all of the

assets of the Debtors (collectively, the "Purchased Assets") to Leonite Holdings Inc. ("Leonite"

or the "Purchaser"), pursuant to the Asset Purchase Agreement (the "Purchase Agreement"),[4] by

and between the Receiver and the Purchaser, dated July 12, 2017, a copy of which is attached

hereto as Exhibit B,[5] free and clear of all claims, liabilities and encumbrances, except as set forth

in the Vesting Order; (b) authorizing, pursuant to section 363 of the Bankruptcy Code, the Sale

of the Debtors' right, title, and interest in and to the Purchased Assets to the Purchaser, free and

clear of all Interests (as defined in the U.S. Order), except as otherwise provided in the Vesting

Order; (c) recognizing, enforcing, and giving full force and effect to the Administration Order;

and (d) granting certain related relief.

    In support of this Motion, the Receiver submits the draft Vesting Order attached

---

[3]    The Receiver will file a copy of the entered Vesting Order upon entry by the Canadian Court and serve on
the parties set forth below in paragraph 41.

[4]    Capitalized terms not defined herein shall have the meanings ascribed to them in the Purchase Agreement.

[5]    Certain of the exhibits to the Purchase Agreement are continuing to be finalized and will be filed prior to
hearing on this Motion.

hereto as <u>Exhibit C</u>, the draft Administration Order attached hereto as <u>Exhibit D</u> and A. Farber &
Partners Inc.'s First Report of the Receiver, dated August 11, 2017 (the "Receiver's Report"),
attached hereto as <u>Exhibit E</u>, and respectfully states as follows:

### JURISDICTION AND VENUE

1.       This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.
§§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N) and (P).
Venue is proper in this Court and in this District pursuant to 28 U.S.C. § 1410.

2.       The statutory predicates for the relief requested herein are sections 105(a),
363(b), (f), (m) and (n), 1501, 1507, and 1521 of the Bankruptcy Code.  The relief is also
appropriate under Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1.

### BACKGROUND

**A.       General Background**

3.       The detailed factual background relating to the Debtors, the Receiver, and
the commencement of these Chapter 15 bankruptcy Cases (as defined herein) is set forth in the
Declaration of Peter Crawley in Connection with the Motion for Provisional and Final Orders
Granting Recognition of Foreign Main Proceeding and Certain Related Relief [Docket No. 7]
(the "Crawley Declaration").

4.       On February 24, 2017, Export Development Canada ("EDC"), Axios
Canada's senior secured lender, made an application under the Bankruptcy and Insolvency Act
(Canada) and the Courts of Justice Act (Ontario) commencing the Canadian Proceeding on an
expedited basis to stay third-party retail centers in the United States from disposing of the
Debtors' pallets and appointing a receiver (the "Receiver Order"). A copy of the Receiver Order
is attached hereto as <u>Exhibit F</u>.  The Canadian Court granted the Receiver Order.

5.       On February 28, 2017 (the "Petition Date"), the Receiver, on behalf of

each of the Debtors, filed voluntary petitions under chapter 15 of the Bankruptcy Code (the

"Chapter 15 Cases") for each of the respective Debtors and the Motion for Provisional and Final

Orders Granting Recognition of Foreign Main Proceeding and Certain Related Relief [Docket

No. 6] (the "Petition for Recognition") pursuant to section 1515 of the Bankruptcy Code seeking

(i) entry of an Order recognizing the Canadian Proceeding as a foreign main proceeding pursuant

to section 1517 of the Bankruptcy Code and (ii) relief under sections 1520 and 1521 of the

Bankruptcy Code.

6.      On March 28, 2017, the Court entered an order approving the Petition for

Recognition on a final basis [Docket No. 27] (the "Final Order").

**B.      The Marketing Process**

7.      As set forth more fully in the Receiver's Report, prior to the appointment

of the Receiver, the Debtors had been searching for financing and investment from the

marketplace for approximately six (6) months and had been in communication with numerous

parties about investing in the Debtors' business. Shortly after the Petition Date the Receiver

employed a solicitation process to identify potential purchasers for the Debtors' business.  In

particular, the Receiver contacted eighteen (18) potentially interested parties, including parties

that had shown interest in financing the business prior to the Petition Date and additional

strategic parties identified by the Receiver. This list of potential purchasers includes the largest

composite poolers of plastic pallets in the United States and the largest global pooler of wooden

pallets. To assist potential bidders with their due diligence following the execution of non-

disclosure agreements, the Receiver provided access to a data room containing further

information with respect to the assets of the Debtors. Of those potential purchasers, five (5)

submitted a non-binding expression of interest in the Debtors' assets.  Three (3) of these parties

indicated a willingness to serve as a stalking horse purchaser in a broader sale process.

However, ultimately, the Purchaser was the only party who agreed to pursue negotiation of a definitive agreement of purchase and sale.

8.     The Receiver, in consultation with EDC, reviewed the sales process that had been conducted thus far, including that which was conducted prior to the appointment of the Receiver by the Debtors. In the Receiver's view, the limited universe of potential purchasers for the unique chattel, the limited funding available to the Receiver, and the guidance provided by two independent appraisals commissioned by the Receiver, a further, broader sales and marketing process (including the additional costs necessary to administer such a process) was not likely to produce a better result than the proposed transaction with the Purchaser.  Accordingly, it was determined that that Receiver would continue negotiations with the Purchaser with the view of finalizing a final binding offer.  On July 12, 2017, the Receiver entered into the Purchase Agreement with the Purchaser.

9.     Accordingly, the Canadian Court is expected to authorize the consummation of the Purchase Agreement on August 24, 2017, carried out by the Receiver, as the best option for maximizing the value of the Debtors' assets for the benefit of the Debtors' creditors.  Once entered, the Vesting Order authorizes the Receiver to take all actions or steps necessary to complete the transactions contemplated by the Purchase Agreement without further approval of the Canadian Court.

**B.     Summary of Purchase Agreement And Local Rule 6004-1 Disclosures**

10.     Pursuant to the Purchase Agreement, the Purchaser will acquire substantially all of the assets of the Debtors.  The Purchaser has offered to purchase the Purchased Assets for a Purchase Price of approximately $450,000 CAD, together with certain Transfer Tax liabilities, as set forth in the Purchase Agreement.

11.    The following is a summary[6] of certain material provisions of the

Purchase Agreement.[7]  The Receiver believes that the Purchase Agreement is fair and reasonable

under the circumstances, is the result of good-faith, arm's-length negotiations, and is in the best

interests of the Debtors, their creditors, and other stakeholders.

12.    Pursuant to the Purchase Agreement, the Purchaser will purchase the

Purchased Assets of the Debtors for a cash purchase price of $450,000 CAD, plus the

assumption of certain Transfer Tax liabilities, all in accordance with the provisions of the

Purchase Agreement.  On the date of the Purchase Agreement, the Purchase provided the

Receiver with a Deposit of $90,000 CAD.  The Purchased Assets include the following:

> (i) All accounts receivable, trade accounts, bank accounts, bank
> accounts, book debts, insurance claims, bills, credits, rebates,
> deposits, prepayments, holdbacks, funds, cash and cash
> equivalents, marketable securities, short-term investments, (ii) the
> Intellectual Property, (iii) the Books and Records, minute books
> and all other corporate records of the Axios Entities, and (iv) any
> and all vehicles, Pallets, Hardware, equipment, parts, inventory of
> spare parts, parts and supplies, furniture and any other tangible
> personal property in which Axios Entities have a beneficial right,
> title or interest ,in all cases, Related to the Business (including
> those in possession of suppliers, customers and other third parties),
> other than Excluded Assets, including without limitation, the assets

---

6    Any summary of, or reference to, the terms and conditions of the Purchase Agreement and/or the Vesting
     Order herein are qualified in their entirety by the actual terms and conditions of the Purchase Agreement
     and the Vesting Order.  To the extent there is any inconsistency between any such summary or reference
     herein and the actual terms and conditions of the Purchase Agreement and the Vesting Order, the actual
     terms and conditions of the Purchase Agreement and/or the Vesting Order shall control.

7    Pursuant to Local Rule 6004-1(b)(iv), a Sale Motion (as defined in the Local Rules) must highlight certain
     provisions contained in the proposed form of sale order and/or the underlying purchase agreement.  The
     Receiver has highlighted below the relevant provisions of the Purchase Agreement that implicate Local
     Rule 6004-1(b)(iv) by providing a citation to the relevant sections of the Purchase Agreement and/or the
     U.S. Order.  In addition, the Receiver highlights that, pursuant to the proposed U.S. Order, it is requesting
     (i) the Sale to be approved under section 363(f) of the Bankruptcy Code, free and clear of any Interest (as
     defined in the U.S. Order) and (ii) a waiver of Bankruptcy Rule 6004(h).

listed on Schedule A to the Purchase Agreement.  See Purchase Agreement § 1.1.[8]

        13.     Among other things, the Purchase Agreement is conditional on the issuance of the Vesting Order by the Canadian Court and recognition of the Vesting Order by this Court.  The Sale has a Target Closing Date of the next Business Day after the entry of the U.S. Order and an outside Closing Date of September 5, 2017, unless extended by the parties.

        14.     In accordance with Local Rule 6004-1, set forth below are certain provisions in the Purchase Agreement and/or the Sale Order that such rule requires the Receiver to highlight in this Motion:

| Highlighted Provision | Description | Location in Sale Order and/or Purchase Agreement |
| --- | --- | --- |
| Sale to Insider | The Purchaser is not an insider as defined by Bankruptcy Code section 101(31). | N/A |
| Management Agreements | Not Applicable | N/A |
| Releases | The Sale will be free and clear of all Interests in accordance with the Vesting Order. | U.S. Order ¶¶ R, 7, 8, 12 |
|  | The Purchaser will not be liable to any Debtor or any predecessor or successor to such Debtor arising out of the Sale and/or Purchase Agreement except as set forth in the Vesting Order, and/or the U.S. Order. | U.S. Order ¶ 11 |
| Private Sale /No Competitive Bidding | The Sale is a private sale.  The Purchase Agreement will not be subject to higher and better offers at a public auction subject to | U.S. Order ¶¶ H, I, J |

---

[8]    For the avoidance of doubt, the "Excluded Assets" set forth in the Purchase Agreement specifically lists all Contracts of the Debtors.  Accordingly, the Receiver does not seek to have any of the Debtors' executory contracts assumed and assigned to the Purchaser pursuant to section 365 of the Bankruptcy Code.

| Highlighted Provision | Description | Location in Sale Order and/or Purchase Agreement |
|---|---|---|
| | procedures established by this Court.[9]  Through this Motion, the Receiver seeks the approval by this Court of a Sale set to be approved by the Canadian Court on August 24, 2017. | |
| Closing and Other Deadlines | The Target Closing Date is the first Business Day following the issuance of the U.S. Order. Closing shall be no later than September 5, 2017 (unless extended by the parties) in accordance with the terms of the Purchase Agreement. | Purchase Agreement § 1.1 |
| Good Faith Deposit | $90,000 CAD | Purchase Agreement § 3.2 |
| Interim Agreements with the Purchaser | None. | |
| Use of Proceeds | The Allocation of the Purchase Price will be provided as set forth in Exhibit B to the Purchase Agreement. Additional cash proceeds shall be paid to a Canadian federal government entity, Service Canada (on account of a statutory priority claim to employees for unpaid wages (the "WEPP Amount")), to the Debtors' senior lender, EDC, and to the Receiver and its legal counsel (on account of professional fees). | Purchase Agreement, Exhibit B; Distributions to Service Canada, Debtors' senior lenders and professionals are set forth in the Administration Order. |
| Tax Exemption | The Purchaser has agreed to be liable for Transfer Taxes as such term is defined in the Purchase Agreement.  The Purchaser has not | Purchase Agreement § 3.5 |

---

[9]     As noted above and in the Receiver's Report, the Sale is the result of an appropriate solicitation and sale process conducted by the Receiver.  As set forth herein, the Receiver believes that this process, resulting in the Purchase Agreement with the Purchaser, has produced the highest and best offer for the Purchased Assets.

| Highlighted Provision | Description | Location in Sale Order and/or Purchase Agreement |
|---|---|---|
| | agreed to assume any liabilities that might arise as a consequence of any cancellation of indebtedness income and, to the extent that any such liabilities arise, the Debtors will have no funds available to pay such tax obligations. | |
| Record Retention | The Debtors will be selling substantially all of their assets.  It is anticipated that shortly thereafter the Canadian Proceeding and these Chapter 15 bankruptcy cases will be closed. | |
| Sale of Avoidance Actions | Not Applicable. | |
| Requested Findings as to Successor Liability | Unless permissible under the Vesting Order or the U.S. Order, the Purchaser, or their affiliates, members, and shareholders shall not be deemed, as a result of any action taken in connection with the Sale or the Purchaser's post-closing use or operation of the Purchased Assets, to: (a) be a successor to the Debtors; (b) have, de facto or otherwise, merged or consolidated with or into the Debtors; or (c) be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, based on any theory, including based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity. | U.S. Order ¶ 11 |
| Sale Free and Clear of Unexpired Leases | Not Applicable | |
| Credit Bid | Not Applicable | |

| Highlighted Provision | Description | Location in Sale Order and/or Purchase Agreement |
|---|---|---|
| Relief from Bankruptcy Rule 6004(h) | Yes | Sale Order ¶¶ L, 20 |

## C.    The Administration Order

15.    The Administration Order seeks to establish authority for the Receiver to wind-down these cases, as well as the cases in Canada, in the most orderly and cost-effective manner.  Specifically, the Administration Order provides for distributions to EDC, among others, up to the full amount of EDC's indebtedness.  However, the Receiver does not believe there will be funds available for the full payment of the EDC debt.  As set forth in more detail in the Receiver's Report, EDC holds a secured claim in the Debtors' assets in the approximate amount of $5 million CAD on which interest and costs continues to accrue.  EDC holds a valid security interest in substantially all of the Debtors' assets securing these amounts owed.  The only unencumbered assets of the Debtors that are being purchased by the Purchaser relate to certain equipment owned by Axios Logistics and Axios USA and are currently in the possession of various Possessory Claimants (the "Unencumbered Assets"). The Purchaser and the Receiver are in the process of finalizing the "Purchase Price Allocation Schedule" to be appended to the Purchase Agreement.  However, in the Receiver's view the majority of the value of the Purchase Price is attributable to the pallets owned by Axios Logistics and subject to EDC's security.

16.    Accordingly, the proceeds from the sale of the Unencumbered Assets will be distributed to EDC as well because after amounts secured by the Receiver's Charge and Receiver's Borrowings Charge (as such terms are defined in the Receiver's Report) are allocated on a pro rata basis among the Debtors, there are no remaining funds available for a distribution to unsecured creditors of Axios Logistics and Axios USA.

- 10 -

17.    Further, the Administration Order establishes guidelines for the following:

    a.    Payment of professional fees for the Receiver and legal counsel (Administration Order § 3);

    b.    Payment to Service Canada (a Canadian governmental entity) on account of the WEPP Amount (Administration Order § 5);

    c.    Approval of subsequent legal fees for the Receiver and legal counsel to complete administration of the cases (Administration Order §§ 4,7);

    d.    Disbursement of funds to EDC not to exceed the maximum amount of EDC's secured debt (Administration Order § 5); and

    e.    The termination, discharge, and release of the Receiver upon completion of the administration of the Canadian Proceedings and these Chapter 15 Cases (Administration Order § 9-16).

18.    Accordingly, the Administration Order allows for the orderly distribution and wind-down of the Debtors' assets and cases in the most cost effective manner.

## RELIEF REQUESTED

19.    By this Motion, the Receiver respectfully requests that this Court enter the U.S. Order, substantially in the form annexed hereto as <u>Exhibit A</u>, pursuant to sections 105(a), 363(b), (f), (m), and (n), 1501, 1507, and 1521 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1 (a) recognizing, enforcing, and giving full force and effect to the Vesting Order; (b) authorizing the Sale of the Debtors' right, title, and interest in and to the Purchased Assets free and clear of any and all Interests in accordance with the terms of the Vesting Order; (c) recognizing, enforcing, and giving full force and effect to the Administration Order; and (d) granting certain related relief.

20.    The Receiver believes that the Sale of the Purchased Assets in accordance with the terms and conditions of the Purchase Agreement, the Vesting Order, and the U.S. Order represents the best realization of value for the Debtors' creditors and other stakeholders under the

circumstances.  This Court's recognition and approval of the Vesting Order will permit the

Receiver to sell the Purchased Assets without disruption and in a timely and efficient manner.

## BASIS FOR RELIEF REQUESTED

**A.      The Court Should Recognize and Enforce the Vesting Order and Authorize the Sale Pursuant to Section 363 of the Bankruptcy Code.**

21.      Section 363 of the Bankruptcy Code applies to the sale of any of the

Purchased Assets located within the territorial jurisdiction of the United States.  *See* 11 U.S.C. §

1520(a)(2); *see also In re Fairfield Sentry Limited,* 768 F.3d 239 (2nd Cir. 2014).

Section 363(b)(1) provides, in relevant part, that a debtor "after notice and a hearing, may use,

sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C.

§ 363(b)(1).  Section 363 of the Bankruptcy Code does not set forth a standard for determining

when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to

confirmation of a plan.  However, courts in this Circuit, and in other districts, have required that

the decision to sell assets outside the ordinary course of business be based upon the sale

proponent's sound business judgment.  *See Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward*

*Holding Corp., (In re Montgomery Ward Holding Corp.),* 242 B.R. 147, 153 (D. Del. 1999); *In*

*re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D.D.C. 1991); *see also In re Abbotts Dairies*

*of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389,

395 (3d Cir. 1996).

22.      The "sound business judgment" test requires a proponent of a sale to

establish four elements in order to justify the sale of property outside the ordinary course of

business.  These factors are (a) that a "sound business purpose" justifies the sale of assets outside

the ordinary course of business, (b) that adequate and reasonable notice has been provided to

interested persons, (c) that the trustee or debtor in possession has obtained a fair and reasonable

price, and (d) that the purchaser has acted in good faith. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Exaeris Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008); *Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Sovereign Estates, Ltd.*, 104 B.R. 702, 704 (Bankr. E.D. Pa. 1989).

23.    In this case, ample business justification exists to sell the Purchased Assets to the Purchaser. The Sale satisfies all four conditions set forth in *Abbotts Dairies*. First, sound business purposes justify the Sale. The Sale presents the best opportunity for the Debtors to maximize the value of their assets. The consideration to be received through the proposed sale transaction set forth in the Purchase Agreement represents fair value for the relevant assets to be sold. In contrast, the alternative to the Sale, a piecemeal liquidation of the assets, would result in recoveries of substantially less than the value attributed to the Debtors' assets as a whole in the context of the transaction proposed through the Purchase Agreement.

24.    Second, in light of the sale process that the Receiver has undertaken to date, adequate and reasonable notice of the proposed Sale has been provided to interested persons. Specifically, all known creditors of the Debtors in the United States are being served with notice of this Motion. Additionally, similar notice was provided of the Vesting Order to affected creditors known in Canada.

25.    Third, the Purchase Price represents a fair and reasonable price for the Purchased Assets. Indeed, the Purchase Price, which is $450,000 CAD is the highest offer received by the Receiver during the marketing process. Fourth, as discussed more fully below, and as described in the Receiver's Report, the negotiation process undertaken with respect to the Purchase Agreement satisfies the good faith requirement. Indeed, the Purchase Agreement is the

product of good faith and arm's-length negotiations among the parties.

26.    In addition, granting the requested relief is in the public interest. Indeed,

the purpose of chapter 15 of the Bankruptcy Code is:

> [T]o incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of—
>
>> (1) cooperation between—
>>
>>> (A) courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and
>>>
>>> (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;
>>
>> (2) greater legal certainty for trade and investment;
>>
>> (3) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;
>>
>> (4) protection and maximization of the value of the debtor's assets; and
>>
>> (5) facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

27.    Courts in this District have granted relief similar to the relief requested in

this Motion. *See, e.g., In re Thane International, Inc.*, Case No. 15-12186 (KG) (Bankr. D. Del.

Dec. 1, 2015) (recognizing and enforcing sale order entered by Canadian court and separately

authorizing and approving sale free and clear of any and all liens, claims, encumbrances and

other interests under section 363 of the Bankruptcy Code and approving the assignment of

assumed contracts); *Xchange Technology Group LLC*, Case No. 13-12809 (KG) (Bankr. D. Del.

Nov. 25, 2013) (same); *Arctic Glacier International Inc.*, Case No. 12-10605 (KG) (Bankr. D.

Del. July 17, 2012) (same); *In re EarthRenew IP Holdings LLC*, Case No. 10-13363 (CSS)

(Bankr. D. Del. Feb. 18, 2011) (recognizing and enforcing sale order entered by Canadian court

and separately authorizing and approving the sale free and clear of any and all liens, claims,

encumbrances and other interests under section 363 of the Bankruptcy Code); *In re Grant Forest*

*Products*, Case No. 10-11132 (PJW) (Bankr. D. Del. April 26, 2010) (same); *In re Destinator*

*Technologies Inc.*, Case No. 08-11003 (CSS) (Bankr. D. Del. July 8, 2008) (same).

    28.  For all of the foregoing reasons, the Receiver respectfully submits that

there is more than ample justification for this Court to enter the U.S. Order, thereby recognizing

and enforcing the Vesting Order and authorizing the Sale pursuant to section 363 of the

Bankruptcy Code.

**B.**  **The Court Should Authorize and Approve the Sale Free and Clear of Interests and**
   **Successor Liability Pursuant to Section 363(f) of the Bankruptcy Code.**

    29.  The Receiver also respectfully requests that this Court authorize the Sale

free and clear of Interests (as defined in the U.S. Order).  Under section 363(f) of the Bankruptcy

Code, a trustee or a debtor in possession may sell all or any part of a debtor's property free and

clear of any and all liens, claims, encumbrances, and other interests in such property if (i) such a

sale is permitted under applicable non-bankruptcy law, (ii) the party asserting such a lien, claim

or interest consents to such sale, (iii) the interest is a lien and the purchase price for the property

is greater than the aggregate amount of all liens on the property, (iv) the interest is the subject of

a bona fide dispute, or (v) the party asserting the lien, claim or interest could be compelled, in a

legal or equitable proceeding, to accept a money satisfaction for such interest.  *See* 11 U.S.C.

§ 363(f); *In re P.K.R. Convalescent Ctrs., Inc.*, 189 B.R. 90, 93-94 (Bankr. E.D. Va. 1995)

("[Section] 363 covers more situations than just sales involving liens … Section 363(f) addresses

sales free and clear of any interest …."); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*,

94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in

the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the

subsections is met).  In addition, a court may authorize the sale of a debtor's assets free and clear

of any liens, claims or encumbrances under section 105 of the Bankruptcy Code.  *See Volvo*

*White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R.

944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of liens] is

within the court's equitable powers when necessary to carry out the provisions of Title 11.").

30.    A sale of the Purchased Assets other than one free and clear of all

Interests, except as otherwise provided in the Purchase Agreement and the Vesting Order, would

yield substantially less value for the Debtors and their creditors than the Sale.  Therefore, a sale

free and clear of all Interests is in the best interests of the Debtors, their creditors, and other

parties in interest.

31.    With respect to any creditors that may assert an Interest in the Purchased

Assets, the Receiver submits that at least one of the subsections of 363(f) of the Bankruptcy

Code applies to such creditors and, in most cases, more than one of such subsections is satisfied.

Notably, the Debtors' senior lender, EDC, has consented to the Sale.  Accordingly, the Receiver

submits that the sale of the Purchased Assets free and clear of all Interests, other than as provided

in the Vesting Order, satisfies the statutory prerequisites of section 363(f) of the Bankruptcy

Code.  Further, as set forth in the Receiver's Report, a portion of the Debtors' assets are stored

with Possessory Claimants (as such term is defined in the Receiver's Report).  However, the

Debtors' rights to those assets will not vest in the Purchaser until the Claim Amount is paid by

the Purchaser to the Possessory Claimants as set forth in the Vesting Order.  Each Possessory

Claimant was previously notified of this arrangement and, to date, no Possessory Claimant has

objected.[10]  Certain Possessory Claimants sought to clarify certain matters with the Receiver and

those matters are being addressed consensually.

32.    Finally, it is well established that a bankruptcy court has the power under

section 363(f) to approve the sale of a debtor's assets free and clear of successor liability claims

against the debtor. *In re TWA Airlines, Inc.*, 322 F.3d 283, 288-90 (3d Cir. 2003) (holding that

successor liability claims are "interests in property" within the meaning of section 363(f) of the

Bankruptcy Code); *United Mine Workers of Am. Benefit Plan v. Leckie Smokeless Coal Co. (In

re Leckie Smokeless Coal Co.)*, 99 F.3d 573 (4th Cir. 1996) (same).  The Receiver respectfully

requests that this Court authorize the Sale of the Purchased Assets to the Purchaser free and clear

of claims based upon successor liability.  In this way, the Purchaser will obtain increased

certainty concerning any claims associated with the Purchase Agreement in the United States as

it will be assured that it will not be consider a successor.  The Receiver submits that the relief

requested herein is an appropriate exercise of this Court's authority under chapter 15 of the

Bankruptcy Code, does not conflict with the relief granted by the Canadian Court in the

Receivership Order, and does not conflict with the Vesting Order.

**D.    The Court Should Afford the Purchaser All Protections under Sections 363(m) and (n) of the Bankruptcy Code as a Good Faith Purchaser.**

33.    In addition to the relief requested above, the Receiver requests that the

Purchaser receive the protections set forth in sections 363(m) and (n) of the Bankruptcy Code.

Specifically, section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property

---

[10]    The Receiver did not send a letter to LIT/Hodges Industrial Trust (the "Landlord"), a landlord located in Atlanta, Georgia, as a negotiated resolution was reached with the Landlord and the Receiver by way of a Stipulation filed before this Court.

> does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith," courts have stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'" *In re Abbots Dairies of Pa.*, 788 F.2d at 147. Courts have held that in order to demonstrate a lack of good faith, a party would have to show "fraud or collusion between the purchaser and [seller] or an attempt to take grossly unfair advantage [of other potential purchasers.]" *Id.*

34. As described in the Receiver's Report, the Purchase Agreement was negotiated without fraud or collusion, in good faith, and from an arm's-length bargaining position. Nor did the Receiver enter into the Purchase Agreement for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia. To the Receiver's knowledge, no party has engaged in any conduct that would cause or permit the Purchase Agreement to be set aside under section 363(n) of the Bankruptcy Code. Accordingly, the Receiver seeks a finding that the Purchaser is a good faith purchasers under section 363(m) of the Bankruptcy Code and has not violated section 363(n) of the Bankruptcy Code.

**E.    The Court Should Recognize and Enforce the Administration Order to Allow for an Orderly and Efficient Wind-down of these Cases.**

35. In furtherance of section 1501(a) of the Bankruptcy Code, section 1521(a)(7) of the Bankruptcy Code provides that "[u]pon recognition of a foreign proceeding… where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any

appropriate relief, including … (7) granting any additional relief that may be available to a

trustee. . . ." 11 U.S.C. § 1521(a).  Moreover, section 1507 of the Bankruptcy Code provides that,

upon recognition, a court "may provide additional assistance to a foreign representative under

this title or under other laws of the United States."  11 U.S.C. § 1507(a).

36.    The Receiver seeks recognition of the Administration Order through

which the Receiver will be able to make distributions to Service Canada, the Debtors' senior

lender,  EDC, make payment to the Receiver and the Receiver's legal counsel, efficiently wind-

down the cases both in Canada and the United States, and seek its termination and discharge at

the appropriate time.

37.    The Bankruptcy Code provides this Court with the authority to give a

foreign representative additional assistance without acting contrary to United States public

policy.  See 11 U.S.C. §§ 1506 & 1507.  Giving full force and effect to the provisions of the

Administration Order is appropriate pursuant to this authority.  The provision of the

Administration Order are routine, including, but not limited to, distributions to claimants with

statutory priority claims, senior creditors, payment of professional fees, and discharge and

termination of the Receiver at the appropriate time.  Each of these actions are routinely granted

pursuant to confirmed chapter 11 plans in the United States and, therefore, do not contravene

United States public policy.  Accordingly, granting recognition of the Administration Order is

not "manifestly contrary to the public policy of the United States," and does not, therefore, run

afoul of Section 1506 of the Bankruptcy Code.  See 11 U.S.C. § 1506.  Indeed the "public policy"

exception has been narrowly construed to apply to only those "matters of fundamental

importance" to the United States.  See, e.g., In re Ephedra Prods.  Liability Litig., 349 B.R. 333,

336 (S.D.N.Y. 2006) (affirming a decision of the bankruptcy court recognizing a Canadian

claims process that did not provide personal injury claimants with the right to a jury trial)
(quoting United Nations General Assembly, Guide to Enactment of the UNCITRAL Model Law
on Cross–Border Insolvency, ¶ 89, U.N. Doc A/CN.9/442 (1997)).

### WAIVER OF RULE 6004(h)

38.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale,
or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless
the court orders otherwise." Fed. R. Bankr. P. 6004(h).  The Receiver requests that the U.S.
Order, once entered, be effective immediately by providing that, to the extent applicable, the
14-day stay under Bankruptcy Rule 6004(h) is waived.

39.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for
an objecting party to appeal before an order can be implemented.  *See* Advisory Committee
Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory
Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce
the fourteen (14) day stay period, commentators have suggested that the fourteen (14) day stay
period should be eliminated to allow a sale or other transaction to close immediately "where
there has been no objection to the procedure." 10 Collier on Bankruptcy, ¶6004.11 (L. King,
16th rev. ed. 2011).  Moreover, it has been suggested that if an objection is filed and overruled,
and the objecting party informs the court of its intent to appeal, the stay may be reduced to the
amount of time actually necessary to file such appeal. *Id.*

40.    Time is of the essence with respect to the U.S. Order.  Accordingly, the
Receiver hereby requests that the Court waive the fourteen-day stay period under Bankruptcy
Rule 6004(h).

### NOTICE

41.    Notice of this Motion has been provided to the (i) counsel to Export

- 20 -

Development Canada (the prepetition senior secured lender to Axios Canada); (ii) Oleg Belittchenko (the prepetition subordinated secured lender to Axios Corp.); (iii) the Canadian Department of Justice; (iv) the United States Internal Revenue Service; (v) counsel to the Debtors in the Canadian Proceeding on behalf of the Debtors; (vi) the Office of the United States Trustee for the District of Delaware; (vii) the Ministry of Finance for the Province of Ontario; (viii) the Office of the United States Attorney for the District of Delaware; (ix) the Delaware Secretary of State; (x) the United States Securities and Exchange Commission; (xi) the Delaware State Treasury; (xii) each Possessory Claimant, (xiii) creditors registered under the personal property security legislation in Ontario, (xiv) certain landlords of the Debtors, (xv) Service Canada, and (xvi) any parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Receiver submits that no other or further notice of the Motion is necessary or required.

## NO PRIOR REQUEST

42.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Receiver respectfully requests that the Court enter the U.S.

Order, substantially in the form annexed hereto as Exhibit A, granting (i) the relief requested

herein, and (ii) such other and further relief as the Court may deem proper.


Dated: August 11, 2017
       Wilmington, Delaware

                     /s/ Morgan L. Patterson
                     Mark L. Desgrosseilliers (Del. Bar No. 4083)
                     Morgan L. Patterson (Del. Bar No. 5388)
                     Womble Carlyle Sandridge & Rice, LLP
                     222 Delaware Avenue, Suite 1501
                     Wilmington, Delaware 19801
                     Telephone:  (302) 252-4320
                     Facsimile: (302) 661-7738
                     E-mail: mdesgrosseilliers@wcsr.com
                     E-mail: mpatterson@wcsr.com


                     Counsel for A. Farber & Partners Inc.